## Cullison Estate

*Daniel E. Teeter*, for exceptant.
*J. Francis Yake, Jr.*, contra.

SHEELY, P. J., December 26, 1953.—Decedent died on June 29, 1952, intestate, leaving to survive him as his sole heirs at law eight children and the issue of a deceased child. A daughter, Letha A. Kepner, filed a petition for allowance to her of the family exemption of $750. The accountants refused to allow the claim and claimant thereupon filed exceptions to the account, thereby renewing her claim. The question to be determined is whether claimant formed a part of the household of decedent at the time of his death.

Decedent owned a large brick dwelling house, a portion of which he rented to another daughter and her family for a cash rental. The remaining portion was occupied by claimant and her father, claimant providing the food for the household and decedent paying the taxes, making the outside repairs, and operating the acreage which went with the house. Some time later claimant was married and her husband moved into the home. There was no change in the arrangements for the operation of the home except that claimant and her husband did buy some new furniture and some of the furniture of decedent was stored in the attic. Decedent had a second floor room which was furnished with his own furniture, and he paid nothing to claimant for his maintenance. There was no specific understanding between claimant and decedent and she was not dependent upon him for her support.

Under section 211 of the Fiduciaries Act of April 18, 1949, P. L. 512, where there is no spouse, "such children as form a part of the decedent's household, may retain or claim as an exemption and as a reasonable requirement for support during the settlement of the estate", property to the value of $750. The contention of the accountants is that claimant did not form a part of decedent's household, but rather that decedent formed a part of claimant's household, and that therefore she is not entitled to the exemption.

Section 211 of the Fiduciaries Act of 1949 was not intended to make any basic change in the law as it existed under the Fiduciaries Act of June 7, 1917, P. L. 447, except to give the right of exemption to a surviving husband. The 1917 Act provided for the exemption to the widow or children "forming part of the family of any decedent." The prior Act of April 14, 1851, P. L. 612, provided that the exemption should be "for the use of the widow and family." Under both acts it was held that no one could make a claim who did not stand in the family relation toward decedent: Henkel's Estate, 13 Pa. Superior Ct. 337, 340 (1900); Andrews' Estate, 30 D. & C. 271 (1937); Moore's Estate, 54 York 152 (1940); Rossi Estate, 69 D. & C. 190 (1949), and, as pointed out in the report of the Joint State Government Commission, the requirement of a family relationship was construed to mean that children must form a part of decedent's "household" to be entitled to the exemption, and hence that word was used in the 1949 Act. The words "as a reasonable requirement for support during the settlement of the estate" were added to secure the benefit of certain deductions for Federal and State tax purposes and did not effect a change in the prior law which held that whether a child is dependent upon decedent or is an adult has no bearing on her right to the exemption: Stevenson's Estate, 23 Dist. R. 747 (1914); Moore's Estate, 54 York 152 (1940). That these words were not intended to make dependency a requirement is further indicated by the new provision allowing an exemption to a surviving husband.

The accountants rely upon Rossi Estate, 69 D. & C. 190 (1949), where decedent left her own house to reside with petitioner in a house owned by petitioner and her husband, who maintained the house from their joint earnings and where, prior to the time decedent came to reside with them, they and their children

formed an independent family unit which was still maintained at the time of the death of decedent. The present case is essentially different from that case, however. Here decedent and claimant lived together and formed a household prior to claimant's marriage. The testimony does not disclose when they began living together but it is a fair assumption that claimant was the child who "remained at home". After her marriage claimant's husband joined the household and there was no change in the arrangements except that claimant and her husband replaced some furniture. The home was owned by decedent and he maintained the house while claimant provided the food.

The facts in the instant case are most similar to those in Moore's Estate, 54 York 152 (1940), where claimant, a son, returned to his mother's home after his divorce and resided there continuously until the time of her death, which occurred about five years later. After about two years claimant married his second wife, who then came into the home, and an apartment was arranged for them on the third floor, although they had the use of the entire house. Claimant, his wife, and his mother ate together, and claimant maintained the table for the most part. Claimant's wife did all the housework and took care of decedent prior to her death. It was held that at the time of the death of decedent that claimant formed a part of her family and of her household.

Prior to the marriage of claimant in this case she was unquestionably a part of decedent's household. We are of the opinion that her marriage did not change the relationship in the home and that she continued to form a part of the decedent's household until his death. She is therefore entitled to the family exemption of $750 and her exceptions to the account must be sustained.

520

And now, December 26, 1953, the exceptions to the account and schedule of distribution are sustained. The accountants are directed to pay unto Letha A. Kepner the sum of $750 as a family exemption; the balance for distribution is thereby reduced to the sum of $4,598.05 and the account showing said balance is confirmed; . . .